```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      SOUTHERN DIVISION at LONDON
```

| | | |
|---|---|---|
| BILLY RAY WILSON, | ) | |
| | ) | |
|     Plaintiff, | ) | Civil No. 6: 21-82-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| JOSEPH R. BIDEN, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
|     Defendants. | ) | |

                \*\*\*    \*\*\*    \*\*\*    \*\*\*

Billy Ray Wilson is a resident of London, Kentucky. Wilson has filed a *pro se* civil complaint [R. 1] and has paid the filing fee [R. 2]. This matter is before the Court to conduct the screening required by 28 U.S.C. § 1915. *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997) ("Even if a non prisoner pays the filing fee and/or is represented by counsel, the complaint must be screened under § 1915(e)(2)."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In his complaint, Wilson invokes Resolution 181 of the United Nations as the basis for this Court's subject matter jurisdiction over his claims. This resolution, passed in 1947, recommended the partition of Palestine into separate and independent Arab and Jewish states.[1] [R. 1, at 3]. Wilson asserts that the creation of

---

[1] See https://en.wikipedia.org/wiki/United_Nations_Partition_Plan_for_Palestine (visited on May 19, 2021).

Israel was accomplished shortly thereafter by a "rich European" who invaded Palestine with his private army. Since then, he asserts, the United States government has provided financial support to the State of Israel, including its "invasion" of the Gaza Strip on May 13, 2021. [R. 1-1, at 1-2]. Wilson further alleges that the United States has been kept in a state of war for many years to support Israel and permitted the U.S.S. Liberty to be attacked in 1967 by Israeli armed forces. *Id*. at 2, 3-4.

Wilson names as defendants Joseph R. Biden in his capacity as President of the United States; Nancy Pelosi in her capacity as Speaker of the United States House of Representatives; Charles Shumer in his capacity as Majority Leader of the United States Senate; and Mitch McConnell in his capacity as Minority Leader of the United States Senate. [R. 1, at 2]. However, Wilson does not make any allegations about the role of these named persons in the events he describes in his complaint. For relief, Wilson demands that the federal government cease support for the State of Israel and declare that foreign countries and American citizens alike should stop praying for a rapture to bring about the end of the world. [R. 1-1, at 5-6].

As an initial matter, Wilson's complaint is subject to dismissal for failure to state a claim. A *pro se* litigant is entitled to a liberal construction of his pleadings and filings, but to avoid dismissal "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Wilson has not made any allegations against the four named defendants regarding the events he describes in his complaint. He has therefore failed to plead factual content sufficient to permit a reasonable inference that the defendants are legally liable for the misconduct alleged. *Cf. Hosn v. United States Dep't of State*, No. 16-2408, 2017 WL 11606982, at *2 (6th Cir. Aug. 21, 2017) (affirming dismissal of complaint for interference with contractual advantage occasioned by 2003 invasion of Iraq for plaintiff's failure to articulate how former Defense Department officials were responsible for cancellation of the contract).

In addition, the Court has an independent obligation to confirm that it possesses subject matter jurisdiction over the claims presented in a complaint. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Court may raise the issue on its own and may do so at any time. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). Based upon that evaluation, the Court conditionally concludes that it lacks subject matter jurisdiction

over Wilson's complaint because it raises political issues rather than legal claims.[2]

The political question doctrine is a function of the separation of powers doctrine and prevents a federal court from deciding an issue that the Constitution assigns to the political branches or that the judiciary is ill-equipped to address. *Baker v. Carr*, 369 U.S. 186, 216 (1962). To determine whether a case involves a nonjusticiable political question, the Court asks if it possesses any one of the following attributes:

1. "a textually demonstrable constitutional commitment of the issue to a coordinate political department;"

2. "a lack of judicially discoverable and manageable standards for resolving it;"

3. "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;"

4. "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;"

5. "an unusual need for unquestioning adherence to a political decision already made;" or

6. "the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

*Baker*, 369 U.S. at 217.

---

[2] *Cf. Al-Tamimi v. Adelson*, 916 F.3d 1, 7 (D.C. Cir. 2019) (treating the political question doctrine as a matter of subject matter jurisdiction); *see also Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012) (noting that where the political question doctrine applies, "a court lacks the authority to decide the dispute before it.").

4

Long-established precedent indicates that Wilson's complaint implicates, at least, the first two attributes of a political question. First, the Constitution expressly commits many matters of foreign affairs to the executive or legislative branches. *See* U.S. Const. art. I, § 8 (granting to Congress the power to "regulate Commerce with foreign Nations," "declare War," "raise and support Armies," "provide and maintain a Navy" and "make Rules for the Government and Regulation of the land and naval Forces"); U.S. Const. art. II, § 2 (granting to the President authority to "make Treaties" and "appoint Ambassadors" and serve as "Commander in Chief of the Army and Navy of the United States"). Accordingly, federal courts are singularly reluctant to intrude upon the authority of the Executive to decide military matters and national security affairs. *United States v. Nixon*, 418 U.S. 683, 710 (1974). Second, questions touching upon foreign relations "frequently turn on standards that defy judicial application." *Baker*, 369 U.S. at 211.

Courts have therefore consistently held that a case whose foundation is grounded in matters of foreign policy presents a nonjusticiable political question. *Cf. Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention."). As the Circuit Court for the District of Columbia has explained:

5

> Courts are not a forum for reconsidering the wisdom of discretionary decisions made by the political branches in the realm of foreign policy or national security. In this vein, we have distinguished between claims requiring us to decide whether taking military action was wise — a policy choice and value determination constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch — and claims presenting purely legal issues such as whether the government had legal authority to act. Accordingly, we have declined to adjudicate claims seeking only a determination whether the alleged conduct should have occurred. Despite some sweeping assertions to the contrary, the presence of a political question in these cases turns not on the nature of the government conduct under review but more precisely on the question the plaintiff raises about the challenged action.

*El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010) (cleaned up). Here, Wilson prays not for legal relief but instead seeks a direct change in foreign policy. [R. 1-1, at 5-6]. His complaint therefore squarely presents only a political question that this Court lacks the authority to decide.

Before acting upon these concerns, "as a general rule, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff opportunity to amend the complaint." *Wagenknecht v. United States*, 533 F.3d 412, 417 (6th Cir. 2008) (*quoting Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (*per curiam*)) (cleaned up). *Apple* provides an exception to this general rule, but only for claims that are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id*. A plaintiff's personal or political beliefs, so long as not plainly

6

delusional or frivolous, are a poor fit for evaluation under *Apple*'s standard in this regard. The Court will therefore afford Wilson an opportunity to amend his complaint to avoid dismissal for want of subject matter jurisdiction.

Accordingly, it is **ORDERED** as follows:

1. Plaintiff Billy Wilson must file an Amended Complaint within **twenty-one days** which asserts claims over which the Court possesses subject matter jurisdiction; and

2. The Court will dismiss this action for lack of subject matter jurisdiction if he fails to do so.

This 20th day of May, 2021.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge